FILED

FEE
PAID

1  Pritish Vora

2  27758 Santa Marg. Pkwy, #530

3  Mission Viejo, CA  92691

4  949-292-8359

5  Plaintiff in Pro Per

2018 SEP 14  PM 3: 17

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY___LAW_____

6

7

8

9            **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

12  Pritish Vora,

                  Plaintiff,

13

14                  vs.

15  LVNV FUNDING, LLC, a Delaware

16  Limited Liability Company, and

17  RESURGENT CAPITAL SERVICES,

18  L.P., a Delaware Limited Partnership,

19                  Defendants.

Case No.  **SACV18-01674 JLS (JDEx)**

**Violations of the Fair Credit**

**Reporting Act [15 U.S.C. § 1681 et**

**seq.]**

**TRIAL BY JURY DEMANDED**

20

21  COMES NOW, Plaintiff, Pritish Vora, ("Plaintiff"), by way of Pro Se, brings his

22  complaint against Defendant LVNV FUNDING, LLC ("LVNV") and Defendant

23  RESURGENT CAPITAL SERVICES, L.P. ("RESURGENT") individually named

24  as LVNV and RESURGENT and collectively named as "Defendants," for violations

25  of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), all parts and

26  sub-parts that apply, and alleges herein as follows:

27

28

COMPLAINT FOR DAMAGES

## **PRELIMINARY STATEMENT FCRA**

1.     The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (internal citations omitted).

2.     The statute governing "permissible purposes of consumer reports," FCRA 15 U.S.C. § 1681b, provides in pertinent part: "(a) In general.  Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances **and no other**."  (Emphasis added).

3.     The FCRA regulates credit reporting agencies as well as creditors, collection agencies, and other parties who provide information to credit reporting agencies and/or obtain and use the consumer credit reports.  15 U.S.C. § 1681b identifies the permissible purposes allowed under the act for conducting credit reviews on consumers.

4.     "Section 623(b)(1)(A) of the FCRA makes it unlawful for a furnisher of information to a Consumer reporting agency, upon receiving a notice of a Consumer dispute from the Consumer reporting agency, not to conduct a reasonable investigation of the disputed information.  15 U.S.C. § 1681s-2(b)."  (See CFPB v.

COMPLAINT FOR DAMAGES

Encore Capital Group, Inc., et al., CFPB File No. 2015-CFPB-0022, at ¶ 124).

5.     "Furnishers" are sources that provide credit information to credit reporting agencies.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009).  Under FCRA, "furnishers" have the duty to investigate and/or correct inaccurate information, and an individual may bring a private cause of action to sue a furnisher for its failure to fulfill those duties.  15 U.S.C. § 1681s-2(b); Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1060 (9th Cir. 2002).

## JURISDICTION AND VENUE

6.     Jurisdiction of this court arises pursuant to Sec 618 of the FCRA [15 U.S.C. § 1681p], and pursuant to 28 U.S.C. § 1331.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the County of Orange, State of California, the harm to Plaintiff occurred in this District, and each defendant regularly conduct business in this District, and in the State of California, therefore establishing personal jurisdiction.

## PARTIES

8.     Plaintiff, Pritish Vora, a natural person, is an adult individual who resides in the County of Orange, in the state of California.

9.     Plaintiff is a "person" as defined in 15 U.S.C. § 1681a(b), and is a "consumer" as defined in 15 U.S.C. § 1681a(c).

10.    LVNV is a Delaware limited liability company that was organized pursuant to Delaware law on April 13, 2005.  LVNV has a registered agent for service of process, and may be served at CORPORATION SERVICE COMPANY, 251 Little Falls Drive, Wilmington, DE 19808.

11.    LVNV is listed as a "debt buyer" in consumer reports, and as a "factoring company" with Credit Karma, a free credit monitoring site for consumers.

12.    LVNV does NOT list either an office address or mailing address on its own website, and states the following on its website: "LVNV's name may appear on a customer's credit report or in a letter from a collection agency."

13.    LVNV lists its principal office address as 6801 S. Cimarron Rd., Ste 424-J, Las Vegas, NV 89113 with various Secretaries of States, but NOT in Nevada. LVNV lists an address **for its officers** with the Nevada Secretary of State as 55 Beattie Place, Suite 100, Greenville, SC  29601.  (Emphasis added).

14.    LVNV is an acronym for "Las Vegas, NeVada," hence "LVNV."

15.    LVNV is NOT registered as a foreign limited liability company with the <u>California Secretary of State</u>, yet LVNV is the named Plaintiff in "10,000's of lawsuits filed in CA."   (See Demurrer to Complaint, <u>LVNV Funding, LLC, a Delaware limited liability company v. James McKinney, and LVNV Funding, LLC, a California corporation</u>, Case No: 30-2018-00995760-CL-BT-CJC, page 9).

COMPLAINT FOR DAMAGES

16.     RESURGENT is a Delaware Limited Partnership that was organized pursuant to Delaware law on June 24, 1999.

17.     RESURGENT lists itself on its website as a "debt collector" and that term is defined by the Fair Debt Collection Practices Act ("FDCPA") [15 U.S.C. § 1692a(6)].

18.     RESURGENT appears in a business entity search with the California Secretary of State, and has a registered agent in California.  RESURGENT may be served at Corporation Services Company – CSC, Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

19.     RESURGENT lists its principal office address as 55 Beattie Place, Suite 100, Greenville, SC 29601 on its website, the exact same address that LVNV lists **for its officers** with the Nevada Secretary of State.  (Emphasis added).

20.     LVNV and RESURGENT are also "covered persons" as defined by the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481(6).  See also 12 U.S.C. § 5481(5) and (15)(A)(x).  The Consumer Financial Protection Bureau ("CFPB") has jurisdiction of covered persons pursuant to CFPA for violations of FDCPA and FCRA, including, but not limited to Sec 623(a)(8)(E) of the FCRA [15 U.S.C. § 1681s-2(a)(8)(E)].  A consumer has **no private right of action** pursuant to Sec 623(a) of the FCRA [15 U.S.C. § 1681s-2(a)].  See Green v. RBS Nat. Bank, 288 F. App'x 641,642 (11th Cir. 2008) (holding that **the FCRA does not provide a**

**private right of action to redress violation of § 1681s-2(a) of the FCRA**, which requires furnishers to submit accurate information to consumer reporting agencies). (Internal cites omitted).  (Emphasis supplied).

21.    LVNV and RESURGENT are also each a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies" about "transactions or experiences" with Consumers, as described in Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A), and are each a "furnisher" as defined in Regulation V, 12 C.F.R. 1022.44(c).

## RESPONDEAT SUPERIOR AND PRINCIPAL-AGENT RELATIONSHIP

22.    Pursuant to the common-law doctrine of Respondeat Superior, LVNV is responsible for (has vicarious liability for) the acts of its agent, RESURGENT.

23.    By way of example, the Honorable Magistrate Judge Mark J. Dinsmore opined: "While courts presume that companies are separate entities, clear evidence can overcome this presumption when: (1) "an agency relationship can be perceived," (2) one company asserts greater-than-normal control over the other, and (3) **where one company is "merely an empty shell."** (See Court Order on Motion to compel deposition answers, <u>Cox v Sherman</u> Case No. 1:12-cv-01654-TWP-MJD, Document 88 at page 3).  (Emphasis supplied).

24.    The court concluded that LVNV "was essentially a shell company." (<u>Cox</u>, *Id.*).

25.    LVNV is a manager-managed LLC and has no employees. (See Mitchell v. LVNV FUNDING, LLC Case No. 2:12-cv-523-TLS).

26.    LVNV has a written agreement and power of attorney with RESURGENT.   RESURGENT acts as the attorney-in-fact for LVNV.   (See Mitchell, ECF No. 39).

27.    RESURGENT, operating as a collection agency, does have employees and directs collection activities on behalf of LVNV. (See Mitchell, ECF No. 168).

28.    LVNV will have its counsel "deny" it is a "debt collector" in answering complaints filed in Federal Court when LVNV is alleged to be a "debt collector." (See Wilder v. LVNV FUNDING, LLC and BLITT AND GAINES, P.C. Case No. 1:16-cv-01965, Document 16 at ¶ 7).

29.    LVNV has a subscriber agreement with the consumer reporting agencies ("CRAs"), including, but not limited to, Experian Information Solutions, Inc. ("EXPERIAN"), Equifax Information Services, LLC ("EQUIFAX"), and TransUnion, LLC ("TRANSUNION").

30.    RESURGENT acts as the servicing agent for LVNV to furnish information to the CRAs, however each is responsible of furnishing information.

31.    By way of example, LVNV is the named entity listed on Plaintiff's consumer reports with TRANSUNION, EQUIFAX and EXPERIAN, either by itself, or listed as "LVNV FUNDING, LLC (c/o RESURGENT CAPITAL

COMPLAINT FOR DAMAGES

SERVICES, L.P.)". LVNV knows (and should know) that EXPERIAN has its North American Headquarters at 475 Anton Blvd., in Costa Mesa, CA.[1]  By furnishing information on a consumer report with a company in CALIFORNIA, **LVNV is attempting to do business in California**.  (Emphasis added).

32.    LVNV has been sued in the past for violations of the FCRA, 15 U.S.C. § 1681s-2(b) for failing to correct or delete information in a credit file after receiving actual notice of such inaccuracies.  (See Smith v. LVNV Funding, LLC, Case No. 1:08-cv-00606-JRN, Document 1 at ¶ 52-56).  LVNV also has been sued pursuant to violations of 15 U.S.C. § 1681b(f) of the FCRA.  (See LEE v. LVNV FUNDING, LLC, Case No. 8:13-cv-01131-BR-SH, Document 3 at ¶ 28).

## STATEMENT OF FACTS

33.    Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

34.    Upon information and belief, The United States Supreme Court explained that F.R.C.P. 8(a) requires that a complaint "give the defendant fair notice of what the …claim is and the grounds upon which it rests." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

35.    Pursuant to F.R.C.P. 8(b)(2), Denials – Responding to the Substance. "A denial must fairly respond to the substance of the allegation."

---

[1] http://www.experian.com/corporate/experian-locations.html

COMPLAINT FOR DAMAGES

36.     Pursuant to F.R.C.P 8(b)(4), "if a party that intends in good faith to deny only part of an allegation **must admit the part that is true** and deny the rest." (Emphasis added).

37.     Defendants know (or should know) that EXPERIAN, EQUIFAX and TRANSUNION are CRAs within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

38.     Defendants know (or should know) that a "consumer report" is defined pursuant to the FCRA, 15 U.S.C. § 1681a(d).

39.     RESURGENT is 99% owned by SHERMAN FINANCIAL GROUP LLC ("SFG LLC") (limited partner) and 1% owned by ALEGIS GROUP LLC ("ALEGIS") (general partner).

40.     LVNV is 100% owned by SHERMAN ORIGINATOR, LLC ("SO LLC"). SO LLC is 100% owned by SFG LLC, and SFG LLC also owns 100% of SHERMAN ORIGINATOR III LLC ("SO III").

41.     RESURGENT knew (or should have known) that **on or around March 13, 2017**, SO III allegedly purchased, attempted to purchase, or looked into purchasing **a non-existent debt** for a credit card number (XXXX-XXXX-XXXX-7835) from Capital One Services, LLC, a "debt collector" and a wholly-owned subsidiary of Capital One, N.A.  (Emphasis added).

42.     LVNV knew (or should have known) that **on or around March 13, 2017**, SO LLC allegedly purchased, attempted to purchase, or looked into

COMPLAINT FOR DAMAGES

purchasing **a non-existent debt** for a credit card number (XXXX-XXXX-XXXX-7835), <u>the same credit card number</u> from Capital One Bank (USA) N.A., ("Capital One Bank") which is a **different bank and entity from Capital One, N.A.** (Emphasis added).

43.    Defendants knew (or should have known) that in order for two alleged creditors to allegedly "sell" an alleged account through assignment, there must be an applicable cardholder agreement, an assignment clause, and proof of assignment. Capital One Financial Corporation (NYSE: COF) is the parent of both Capital One Bank **and** Capital One, N.A., which is information known (or should have been known) by defendants.  LVNV and RESURGENT know that SO III and SO LLC **are also separate entities**, and thus in order for two entities to allegedly "purchase" an account through assignment, there must be an applicable cardholder agreement, an assignment clause, and proof of assignment.

44.    None of the Capital One entities is named as a defendant in this complaint.   The respective parent companies of LVNV and RESURGENT, including SO LLC, SO III, ALEGIS and SFG LLC are also not named as defendants, and are mentioned herein for clarity and reference.

45.    On March 16, 2017, then again on April 25, 2017, and yet again on October 24, 2017, defendants violated 15 U.S.C. § 1681 by running credit inquiries into Plaintiff's consumer credit report with EXPERIAN, without Plaintiff's

COMPLAINT FOR DAMAGES

knowledge or authorization, and without having a permissible purpose for conducting a credit review defined pursuant to 15 U.S.C. § 1681b.

46.     Defendants did not obtain permission from Plaintiff to conduct a credit review and/or credit inquiry with EXPERIAN for purposes of extending credit, employment, insurance, underwriting, or any other purposes allowed by the FCRA. The credit reviews are still reflecting on Plaintiff's EXPERIAN credit report and file until today.

47.     At or about the time Defendants initiated the credit pulls of Plaintiff's consumer report with EXPERIAN:

    a.     Plaintiff did not apply for any credit, loans or services with Defendants, and Defendants did not make an offer for credit to Plaintiff.

    b.     Plaintiff did not seek employment with Defendants.

    c.     Plaintiff did not owe any debts to Defendants.

    d.     Plaintiff did not apply for an insurance policy with Defendants.

    e.     Plaintiff **did not have any existing account(s)** within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq. and pursuant to 15 U.S.C. § 1681a(r)(4). (Emphasis added).

    f.     Plaintiff did not initiate any business transaction with defendants.

g.    Defendants did not need the report for the purpose of establishing Plaintiff's capacity to make child support payments.

h.    Defendants were not administering a state plan under §454 of the Social Security Act [42 U.S.C. § 654].

48.    Defendants conducted the above described credit reviews on Plaintiff's records without communicating a permissible purpose as defined by the FCRA. Defendants conducted their actions with the willful intent to extort funds from Plaintiff through the insertion of false information which it knew (or should have known) would damage Plaintiff's credit score, credit worthiness and reputation. Upon information and belief and at all times relevant, defendants acted with the full awareness and knowledge that accessing Plaintiff's consumer report would violate the FCRA, 15 U.S.C. § 1681b(f), and would continue to violate the FCRA with each subsequent impermissible pull of Plaintiff's report.

49.    Defendants knew (or should have known) that Plaintiff has standing to claim damages of willful violations of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(B), as stated, quoted verbatim: "in the case of a natural person for obtaining a consumer report under false pretenses of knowingly without a permissible purpose, **actual damages sustained by the consumer as a result of the failure or $1,000 whichever is greater**." (Emphasis added).

50.     On March 27, 2017, Plaintiff sent a copy of a "NOTICE" to SO III via certified mail with electronic return receipt to PO BOX 10497 in Greenville, SC 29603, which is the exact same address used by RESURGENT for correspondence, and DENIED he owed a debt regarding the Capital One Bank credit card number XXXX-XXXX-XXXX-7835 (hereinafter referred to as "the alleged account").

51.     RESURGENT knew (or should have known) that the NOTICE provided the history and background of Plaintiff's dispute with Capital One Bank and its agents regarding the alleged account, and it speaks for itself.

52.     RESURGENT knew (or should have known) that Plaintiff made it abundantly clear in the six-page NOTICE that **the alleged account was a fake, fictional, imaginary account number that was created on or around August 25, 2016, by Capital One Bank itself, without Plaintiff's knowledge or consent, and without any applicable customer agreement.** (Emphasis added).

53.     RESURGENT knew (or should have known) that SO III did not respond to Plaintiff, and thus did not dispute any of the factual averments or denials, including, but not limited to:

a.     That the alleged "balance of $8,955.36" was denied.

b.     That the alleged "ownership" of the account was denied.

c.     That the alleged account was "in default" was denied.

COMPLAINT FOR DAMAGES

54.    Defendants sent a collection letter to Plaintiff through one of its agents, CREDIT CONTROL, LLC ("CREDIT CONTROL"), dated March 23, 2017 and received by Plaintiff on or around early April 2017, and the letter claimed it was an "attempt to collect a debt."  The letter crossed the mail with Plaintiff's letter dated March 27, 2017 to SO III.  Upon research and inquiry online, Plaintiff learned this letter was a "dunning letter."

55.    Defendants know (or should know) that "A dunning letter is the same as a collection letter."  (See <u>Jolly v. Shapiro</u>, 237 F.Supp. 2D 888, 892 n.3 N.D. Ill 2002).

56.    Plaintiff had never heard of the word "dunning" but found it peculiar that it rhymed with the word "cunning."  Cambridge Dictionary defines "cunning" as **<u>"skillful in planning and ready to deceive people to get what you want."</u>** (Emphasis added).

57.    The dunning letter falsely listed LVNV as "Current Creditor" and falsely listed "Capital One, N.A." as the "Original Creditor."  The letter made no mention of the entity "Capital One Bank (USA) N.A." and also falsely listed the "last payment" for the account number "ending in 7835" as "07/06/2016."

58.    The dunning letter stated "the account was purchased by LVNV."

59.    The dunning letter cited not one shred of evidence that LVNV "purchased" "the account," and thus the claim and the overall dunning letter itself was construed by Plaintiff as false, deceptive and amounted to hearsay.

60.    Plaintiff did not apply for, and did not receive a "firm offer for credit or insurance" from LVNV, pursuant to 15 U.S.C. § 1681a(l) of the FCRA.  (See Lee at ¶ 30).

61.    LVNV is not a "creditor" as defined in section 702 of the Equal Credit Opportunity Act [15 U.S.C. § 1691a(e)].

62.    LVNV is not a "creditor" as defined in Sec 803(4) of the FDCPA, [15 U.S.C. § 1692a(4)].

63.    LVNV is not a "creditor" as defined in the Truth And Lending Act [15 U.S.C. § 1602(g)].

64.    LVNV is not a "financial institution" as defined in 15 U.S.C. § 1681a(t) of the FCRA.

65.    LVNV knew (or should have known) that Plaintiff did NOT incur a debt for the alleged account.  The term "debt" is defined pursuant to the FDCPA, 15 U.S.C. § 1692a(5).

66.    LVNV knew (or should have known) that Plaintiff was NOT a debtor for the alleged account.  The term "debtor" is defined by California Civil Code § 1788.2(h).

67.     On April 3, 2017, Plaintiff sent "NOTICE" to LVNV to its President, Kevin P. Branigan.  Plaintiff sent the letter to the address listed in the dunning letter, in Hazelwood, MO.  Plaintiff cited the alleged account was an "Ineligible Account" which is one that is defined in standard "debt buyer agreements" and one that is NOT subject to collections.[2]  LVNV knew (and should have known) the definition of an "Ineligible Account" can include an account that is disputed by a consumer, and/or a "Removed" and/or "Deleted" account from a bank's portfolio of accounts.

68.     The NOTICE was sent via United States Postal Service Express Mail with tracking receipt, and received by LVNV through its agent on April 4th, 2017.  CREDIT CONTROL is not a defendant in this complaint, and is named herein only for clarity and reference.

69.     LVNV knew (or should have known) that the NOTICE included a copy of the dunning letter.  Plaintiff wrote the word **"DENIED"** across the front, with an arrow pointing to the alleged "Balance Due."  Plaintiff also wrote the phrase **"REFUSAL TO ACCEPT OFFER, WITHOUT RECOURSE"** on the back, where Defendants, on behalf of their agent, were attempting to make an offer to contract with Plaintiff.  LVNV knew (or should have known) that Plaintiff signed the NOTICE in front of a California Notary, and the NOTICE speaks for itself. (Emphasis added).

---

[2] http://debtbuyeragreements.com/archives/category/agreements

70.     Defendant LVNV knew (or should have known) that Plaintiff **DENIED** he owed a debt, and refused to pay it.  (Emphasis added).

71.     LVNV knew (or should have known) that there was NO applicable signed Cardholder Agreement for the alleged account.

72.     LVNV knew (or should have known) that there was NO physical credit card for the alleged account.

73.     LVNV knew (or should have known) that there were NO merchant transactions for the alleged account.

74.     LVNV knew (or should have known) that there were NO statements sent by Capital One Bank or received by Plaintiff for the alleged account.

75.     LVNV knew (or should have known) that Plaintiff sent a copy of his NOTICE to the CFPB, which due to postal delays in Washington D.C., arrived in Iowa to the CFPB office on May 4, 2017, and assigned a <u>Case No. 170504-2064473</u>. **The NOTICE to LVNV is on file as a complaint against LVNV with the Federal Agency, and is a matter of record.** (Emphasis added).

76.     On or around May 2, 2017, defendants made a conscious choice to furnish false, inaccurate, patently misleading an unverified information into Plaintiff's consumer reports regarding the alleged account.

77.     Plaintiff received an alert from a credit monitoring service on or around May 10, 2017, indicating that "LVNV FUNDING, LLC" was the furnisher of

information for a "collections" item regarding the alleged account. **Plaintiff incurred no such debt that was subject to "collections" and thus the item was FALSE, inaccurate, patently misleading, and unverified.** (Emphasis added).

78.    The furnishing of the alleged account caused Plaintiff's credit score to drop from 720 to 545 once defendants furnished the false information into Plaintiff's credit reports, thus causing harm to Plaintiff's credit worthiness and reputation.

79.    Plaintiff sent a "NOTICE OF DISPUTE" to all three CRAs on May 22, 2017, via certified mail with EXPERIAN and EQUIFAX, and via telephonic dispute with TRANSUNION, disputing the accuracy of the item, citing the impermissible pull made by defendant(s), and requesting a reinvestigation.

80.    Defendants knew (or should have known) that the CRAs initiated the dispute via Automated Credit Dispute Verification ("ACDV"), and that the furnisher, LVNV, received the NOTICE.

81.    Defendants knew (or should have known) that the alleged "balance" of the alleged account was FALSE, inaccurate, patently misleading, and unverified.

82.    Defendants knew (or should have known) that the account number itself was FALSE, inaccurate, patently misleading, and unverified.

83.    Defendants failed to conduct a proper investigation upon receipt of NOTICE from the CRAs, thereby violating 15 U.S.C. § 1681s-2(b)(1)(A), and failed to DELETE the item thereby violating 15 U.S.C. § 1681s-2(b)(1)(E)(ii).

COMPLAINT FOR DAMAGES

84.     RESURGENT responded to the CFPB in a letter dated June 15, 2017 regarding Plaintiff's complaint against LVNV filed with the CFPB.  RESURGENT knows that LVNV does not respond directly to the CFPB regarding a complaint.

85.     RESURGENT knowingly, willfully, intentionally and maliciously made false statements in writing and sent those false statements through the U.S. Mail and/or through the U.S. Wires (i.e., via fax, internet, online portal at consumerfinance.gov) to the CFPB, **a federal agency**.  (Emphasis added).

86.     By way of example, RESURGENT stated to the CFPB, quoted verbatim: "We have verified with the original creditor that the card was reported lost or stolen, so a new account number was assigned to the account."

87.     RESURGENT knew (and should have known) that there was no such card "reported lost or stolen."  RESURGENT concocted a story for the CFPB.

      a.     RESURGENT did not provide any supporting documentation for the CFPB to make such a fabrication that "a new account was assigned" because a card was "reported lost or stolen."

      b.     RESURGENT did not provide a copy of a police report to the CFPB.

      c.     RESURGENT did not provide a copy of a fraud affidavit to the CFPB.

d.   RESURGENT did not provide a MP3 or other type of audio file with a recording of Plaintiff calling Capital One Bank and reporting a card as "lost or stolen."

88.   RESURGENT allegedly sent documents which it claimed satisfied the requirements to "validate the debt" pursuant to § 1692g of the FDCPA. LVNV knew (or should have known) that when RESURGENT responds to a consumer complaint on behalf of LVNV to the CFPB, it preys upon the gullibility of what Congress calls the "least sophisticated consumer."[3] RESURGENT knew (or should have known) that its response to the CFPB was filled with gobbledygook and "account stated" theories, which Plaintiff construed as hearsay, and were <u>DENIED</u>.

89.   RESURGENT knew (or should have known) that Capital One Bank did NOT send any account statements to Plaintiff regarding the alleged account. **RESURGENT already knew from prior correspondence by Plaintiff that Plaintiff demanded the applicable cardholder agreement directly from Capital One Bank, and that Capital One Bank failed to provide it upon repeated "NOTICE" sent to both its CEO and its CFO.** (Emphasis added).

---

[3] The term "least sophisticated consumer" does not imply that a person is of limited intelligence, or has trouble "Keeping Up with the Kardashians." Courts use this term liberally in viewing a case from the standpoint of a person who may not be familiar with abusive debt collection and credit reporting practices, in violation of the FDCPA and FCRA, respectively.

90.     Defendants knew (or should have known) that the CFPB states the following on its site at consumerfinance.gov, quoted verbatim:

> a.     "If you are looking for information specific to your account, contact the bank or institution that issued your card. **By law, the issuer must make your agreement available to you upon request.** If you are having trouble getting your agreement, let us know by submitting a complaint." (Emphasis added).[4]

91.     RESURGENT also indicated in its response to Plaintiff via the CFPB that it was "a communication from a debt collector" and that it was "attempting to collect a debt" from Plaintiff.

92.     Plaintiff responded to RESUGENT and filed a **second complaint** against Defendant LVNV with the CFPB on July 10, 2017, disputing the claims by RESURGENT.  The CFPB assigned Case No. 170710-2234286.  Defendants know (or should know) that the complaint is on file with the CFPB, and that Plaintiff sent a hard copy via United States Postal Service Overnight Mail to RESURGENT with delivery tracking receipt.  **The "NOTICE" reaffirmed and incorporated by reference the first complaint Plaintiff sent to LVNV, and the complaint speaks for itself.** (Emphasis added).

---

[4] https://www.consumerfinance.gov/credit-cards/agreements/

COMPLAINT FOR DAMAGES

93.    Defendants understood from Plaintiff's second "amended" complaint that Plaintiff OBJECTED to an 'account stated' back in July 2016 for a PRIOR credit card account being reported inaccurately by Capital One Bank (XXXX-XXXX-XXXX-0117) to the CRAs ("the PRIOR account").

94.    Defendants understood that Plaintiff repeatedly sent "NOTICE" to Capital One Bank and to its parent **via certified mail restricted delivery**, demanding to see the front AND back of an ORIGINAL signed copyright 1999 true, correct and complete certified copy of the cardholder agreement evincing full and fair disclosure of ALL terms and conditions (also known as a "customer agreement"). Plaintiff also demanded the validation of the actual accounting, and for an officer or agent with **personal knowledge of the facts** to sign an affidavit titled "VERIFICATION OF DEBT" in order for Plaintiff to settle the PRIOR account. (Emphasis added).

95.    Defendants understood that no person at Capital One Bank would sign the affidavit despite three separate offers of presentment.  Defendants understood that Capital One Bank did not provide the validation of the actual accounting. Defendants understood that Capital One Bank instead tried to "pawn off" an unsigned and post-dated copyright 2014 six-page customer agreement as the "applicable agreement."   Defendants understood that Plaintiff DENIED the copyright 2014 customer agreement was the applicable agreement.

96.     Defendants understood that Plaintiff included in his second CFPB complaint that Capital One Bank was sued in Federal Court in a case seeking class-action for utilizing these type of post-dated agreements as the "applicable agreements" which were NOT a modification or amendment of an original agreement (See Wheeler v. Capital One, Case No. 2:12-cv-05848-MSG, at ¶ 27-30). Plaintiff instructed Defendants to search via "Google" and therefore Defendants knew (or should have known) that the bank settled the case with Wheeler.

97.     Defendants understood that Plaintiff DENIED he owed a debt, disputed the same, and demanded strict proof thereof.  Defendants understood that **Capital One Bank failed to prove a debt**.  (Emphasis added).

98.     Defendants understood that Plaintiff sent a "NOTICE OF DISPUTE" to the CRAs, requesting a reinvestigation of the item for lack of an applicable cardholder agreement.

99.     Defendants understood that the CRAs conducted a reinvestigation, and after failing to verify Capital One Bank had the agreement, **the CRAs deleted the PRIOR account**, and sent proof of permanent deletion to Plaintiff (Emphasis added).  Defendants knew this was plainly stated in his CFBP complaint.

100.    Defendants understood that Plaintiff did NOT release Capital One Bank from its responsibility to provide him back the ORIGINAL security instrument for the PRIOR account when Capital One Bank failed to provide a closing statement

with a $0.00 balance due.  **Defendants understood that there was no balance struck that Plaintiff agreed to except for a ZERO balance**.  (Emphasis added).

101.   Defendants understood that Capital One Bank still had an obligation as per CFPB rules which state "by law" <u>the bank must provide the agreement</u>.

102.   Defendants understood and knew (or should have known) that a bank's obligation to comply with Plaintiff's demand for the applicable customer agreement was NOT forgiven.

103.   Defendants understood that Plaintiff sent a complaint against the CEO of Capital One Bank with the CFPB on or around August 18, 2016 for failure to comply with Plaintiff's demand notice.  Defendants understood that the CFPB has a record of the complaint.

104.   Defendants understood that upon receipt of Plaintiff's complaint, the bank created a **fake account number ending in 7835** (i.e., the alleged account), and furnished false information on his consumer reports.  (Emphasis added).

105.   Defendants understood that Plaintiff filed "NOTICE" to all CRAs that Capital One Bank created an unauthorized account, and that Plaintiff disputed all information that was false, inaccurate, misleading and UNVERIFIED.

106.   Defendants understood that TRANSUNION conducted its reinvestigation, and DELETED the inaccurate item from Plaintiff's consumer report on or around October 31, 2016, and sent Plaintiff proof of deletion.

COMPLAINT FOR DAMAGES

107.   Defendants knew (or should have known) that the CRAs have a policy that if an item is deleted, an ACDV is sent to ALL national reporting agencies.

108.   Defendants understood that Plaintiff sent MULTIPLE additional "NOTICE OF DISPUTES" to both EXPERIAN and EQUIFAX, with a "NOTICE OF PENDING LITIGATION" to the CRAs and Capital One Bank for blatant violations of the FCRA when the item was not properly reinvestigated and deleted.

109.   Defendants understood that EXPERIAN was instructed by Capital One Bank to DELETE the item March 10, 2017, and the item was deleted.

110.   Defendants understood that EQUIFAX was instructed by Capital One Bank to DELETE the item on March 10, 2017, and the item was deleted.  Defendants knew (or should have known) that Plaintiff obtained the proof of deletions.

111.   Defendants knew (or should have known) from his detailed complaint to the CFPB that Plaintiff had standing to sue BOTH the bank and the CRAs, that Plaintiff provided ample "NOTICE" to both, and that the bank deleted the item on the remaining two credit bureaus to mitigate its damages.

112.   Defendants understood that **at all times relevant** during Plaintiff's dispute, Capital One Bank or its agents **DID NOT** attempt to make any collection calls or send demands for payment for the alleged account.  Defendants knew (or should have known) that the bank did not simply refrain from attempting to collect because "it was playing nice nice" with Plaintiff.  (Emphasis added).

113. Defendants understood that the alleged account is the same Capital One Bank account number that RESURGENT was attempting to collect in its response sent to Plaintiff's complaint filed with the CFPB. Defendants knew (or should have known) that the alleged account is nothing more than a phony, a fake, with no Regulation Z disclosures, no physical credit card, and no cardholder agreement.

114. Defendants understood that the alleged account is the one that defendants falsely represented a "Balance Due" in the dunning letter.

115. Defendants understood that the alleged account is the one that defendants furnished to the CRAs, falsely representing that Plaintiff owed a debt.

116. Defendants understood that the alleged account is the one defendants failed to conduct a proper investigation upon receipt of NOTICE from the CRAs.

117. Defendants understood that the alleged account is the one that RESURGENT **falsely represented to the CFPB that it "verified" it was "a new account number assigned" because "the prior card was reported lost or stolen."** (Emphasis added).

118. Defendants have faced regulators in Maryland for allegedly providing state courts with inapplicable cardholder agreements in attempts to collect a debt.

119. Defendants were "busted" by the regulators in Maryland, but avoided a hearing and settled the case without admitting any wrongdoing. The complaint and the settlement agreement are a matter of public record, are readily available for any

COMPLAINT FOR DAMAGES

person who has a laptop computer, an internet connection, and can "Google it." Defendants know that each document speaks for itself. (See In The Matter of LVNV Funding, LLC, Case No. DFR-FY2012-012).  By way of example, the allegations by the Maryland State Collection Agency Licensing Board In The Office of The Commissioner of Financial Regulation, stated the following:

a.    "Respondents might have acquired an exemplar contract similar to the ones entered into by the consumer defendants with the original creditor, **but which did not contain the actual terms applicable to the specific consumer credit agreement at issue**. (See In The Matter of LVNV Funding, LLC, page 17, ¶ 20). (Emphasis added).

120.   Upon information and belief, Defendants understood the difference between an "open" account and a "closed" account.   A "closed" account is, according to Black's Law Dictionary, one "to which no further additions can be made on either side…" Thus, it is clear that the "open" or "closed" nature of a book account turns not on the account balance per se, but on the parties' expectations of possible future transactions between them.'" (See Cochran v. Rubens, 42 Cal. App. 4th 481, 485 (1996)).

121.   Defendants knew (or should have known) the PRIOR account was **CLOSED on August 8, 2016 by the request of Plaintiff**. (Emphasis added). There

was no continuation of the PRIOR account, and there were no "expectations of possible future transactions." At least one appeals court has rejected the notion that a liability to a bank exists absent the presence of an applicable cardholder agreement with ALL terms and conditions provided. By way of example, see <u>Thomas v. American Express</u>, Alabama Court of Civil Appeals, cv-11-903556.

122. Defendants knew (or should have known) that if Capital One Bank or any of its agents lacked standing to either furnish or to collect a non-existent debt, then by logic and common sense, **neither did defendants**. (Emphasis added).

123. Defendants understood that Plaintiff need not accept mere conclusory statements couched as factual allegations on any "account stated" theory when he specifically objected to the "account sated," provided affirmative defenses, and DENIED he owed a debt. Mere threadbare recitals by Defendants that Plaintiff "owes a debt" are conclusory, hearsay, and **DENIED**. (Emphasis added).

124. Defendants knew (or should have known) that the CRAs have specific block provisions that prohibit a permanently deleted item from reappearing, pursuant to the FCRA 15 U.S.C. § 1681i(a)(5)(B)(i).

125. Upon information and belief, Defendants are sophisticated businesses who need not rely on hearsay or speculation. Defendants have access to information in their possession to know (or should know) that a bank can circumvent the block provisions by creating a FAKE account number to furnish an item that was correctly

disputed upon receipt of proper NOTICE and correctly deleted by the CRAs, and **that is exactly what Capital One Bank did**.  (See <u>Williams v. Capital One</u> Case No. 5:17-cv-01216-CLS, Document 101-4, sworn testimony by Leonard A. Bennett before the House Committee on Financial Services, "Fair Credit Reporting Act: How it Functions for Consumers and the Economy", page 17 at ¶ 4).  (Emphasis added).

126.   Defendants have chosen to "park" the same alleged account, claiming it is an "OPEN" account subject to "collections" even though it is the SAME alleged account that was never "OPEN" and was furnished inaccurately by Capital One Bank, whereby the alleged debt was denied, disputed and the item was DELETED.

127.   Defendants know (and should know) that the term "park" is an industry term used by data furnishers to willfully violate the FCRA by <u>furnishing</u> a false balance and/or false item, and for the CRAs to willfully violate the FCRA by <u>reporting</u> the false balance and/or false item, even when they know the information is false.  (See <u>Rogers v. Discover Bank</u>, Case No. 2:13-cv-01124-HGD, Document 1 at ¶ 57-59). (See also <u>Ross v. LVNV FUNDING, LLC</u>, Case No. 2:16-cv-00150-SGC, Doc. 1 at ¶ 64-65).[5]  (See also <u>Williams</u>, Doc. 57 at ¶ 57-58.  Defendants use false credit reporting as a strategy to ruin the credit score <u>in order to coerce payment from consumers on alleged but non-existent debts that are NOT owed to Defendants</u>.

---

[5] In <u>Ross</u>, LVNV had apparently even lost its collection suit in small claims court, yet allegedly continued its false credit reporting until it was sued by counsel for Ross in Federal Court.

128.   RESURGENT implied to the CFPB via its response to Plaintiff's first complaint that the item is subject to furnishing with the CRAs, and suggested Plaintiff to "file a police report" which it knew (or should have known) was absurd.

129.   RESURGENT knew (or should have known) that its claims to the CFPB were nothing more than fantastical delusions that Plaintiff agreed to pay a debt on the alleged account by way of an applicable agreement or account stated.

130.   RESURGENT responded to the CFPB on July 20, 2017 regarding Plaintiff's second "amended" complaint filed against LVNV with the CFPB.

131.   RESURGENT regurgitated its prior response to the first complaint filed by Plaintiff.  RESURGENT reiterated to the CFPB that it takes its compliance procedures seriously.  RESURGENT knew that Plaintiff regarded the claim as "poppycock" which Oxford Dictionary defines as "nonsense."

132.   RESURGENT knew (or should have known) its claim of an "account stated" for the alleged account, although novel, was gossamer in nature, barely rising above the level of speculation, and resembled a house of straws built on sand.

133.   Plaintiff provided repeated "NOTICE PLEADINGS" to Defendants via the CFPB, via direct disputes, and via "NOTICE OF DISPUTE" to the CRAs, and instructed Defendants **and any of its agents** to refrain from violating any state or Federal laws regarding the furnishing and/or collection of the non-existent debt.

Despite repeated good-faith efforts by Plaintiff and providing repeated NOTICE, Defendants' actions **smacked of recidivism**. (Emphasis added).

134.    RESURGENT knew (or should have known) that its communication with Plaintiff through the CFPB in its response to Plaintiff's second complaint against LVNV was defined as a "subsequent communication" with Plaintiff.

135.    RESURGENT, in its subsequent communication, **did not disclose** that "the communication is from a debt collector" pursuant to Sec 807(11), [15 U.S.C. § 1692e(11)]. (Emphasis added).   RESURGENT knew (or should have known) that the FDCPA requires the disclosure with EACH subsequent communication.

136.    RESURGENT did not dispute the factual statements in Plaintiff's second complaint filed with the CFPB, including, but not limited to:

a.        That the CFPB issued a CONSENT ORDER against CHASE    BANK,    USA    N.A.,    which    stipulated    that "Documentation and Information Available to Debt Buyers After Debt Sale will make available to a Debt Buyer, at a minimum: **"the Effective Credit Agreement."** (See In the Matter of Chase Bank, Consent Order File No. CFPB-2015-0013, at ¶ 69(a)(i)). (Emphasis added).

b.        That the CFPB also stipulated that "Documentation and Information Available to Debt Buyers After Debt Sale" to also

COMPLAINT FOR DAMAGES

include **"<u>a record of any such dispute and the results of</u>**

**<u>Respondent's investigation of the dispute.</u>"**   (See Consent

Order at ¶ 69(a)(ii)). [6] (Emphasis added).

137.   RESURGENT knew (or should have known) that it did NOT have "the

Effective Credit Agreement" which the CFPB defines as "the written document or

documents evidencing the terms of the legal obligation between Respondents and

the Consumer at the time of Charge-Off."  (See Consent Order at ¶ 11(l)).

138.   RESURGENT did not make any collection calls to Plaintiff, either by

itself or through any of its agents, yet <u>continued</u> to furnish monthly false information

to the CRAs regarding the non-existent debt.

139.   RESURGENT did not make any further written statements indicating

that it was "attempting to collect a debt" from Plaintiff, yet <u>continued</u> to furnish

monthly false information to the CRAs regarding the non-existent debt.

140.   RESURGENT <u>did</u> have a record of Plaintiff's dispute with Capital One

Bank, and knew (or should have known) the "results of the dispute."

141.   Upon information and belief, Defendants were "done dunning."

142.   Plaintiff extended all courtesies to BOTH defendants, LVNV and

RESURGENT, in order to resolve the dispute amicably and without litigation.

---

[6] Plaintiff respectfully requests this court to take judicial notice of the CFPB CONSENT
ORDER, and for any regulatory actions specifically taken against Defendants.

143.   By way of example, Plaintiff wrote the following in his second complaint with the CFPB on July 10, 2017: "Based on the foregoing, and to reach an amicable resolution to this matter, I request that Resurgent/LVNV delete the item from all credit files upon receipt of NOTICE…In consideration for the permanent removal by Resurgent/LVNV of this item from my credit files, and the permanent cease and desist of its attempts to collect on this alleged account, **I will also consider my investigation into this matter as closed for good.**" (Emphasis added).

144.   Defendants understood upon receipt of the response by Plaintiff that Plaintiff met all conditions precedent before the filing of this suit.

145.   Defendants understood that Plaintiff <u>would seek all legal remedies if necessary</u>, and was making every effort for Defendants to mitigate damages.

146.   Defendants understood that failing to provide the documentation requested by Plaintiff created a tacit agreement, and thus defendants had no basis to establish and substantiate any cause of action, either on "account stated" or by way of an "applicable cardholder agreement."

147.   Defendants knew (or should have known) that they lacked standing, either to furnish or to collect on the alleged account for the non-existent debt, and failed to state a claim for which relief could be granted.

148.   Defendants continued to furnish the alleged account to the CRAs, which it knew was FALSE, patently misleading and/or unverified.

149.   Defendants violated and continued to violate 15 U.S.C. § 1681s-2(a)(1)(B) and 15 U.S.C. § 1681s-2(a)(2)(B).  These violations have no private right of action by an individual, and thus, are simply "dead weights" of the FCRA.  Upon information and belief, the Ninth Circuit opined the following, "The words of a statute, are, of course, dead weights unless animated by the purpose of the statute." (See Favish v. Office of Indep Counsel, 217 F.3d 1168, 1171 (9th Cir. 2000)).

150.   Plaintiff sent NINE additional NOTICE OF DISPUTE letters to the CRAs regarding the alleged account, via recordable delivery tracking with USPS.com.  Defendants received said NOTICE from the CRAs through the ACDV.

## METRO 2: RISE OF THE MACHINES

151.   Defendants utilize the e-OSCAR® web-based, Metro 2 compliant, automated system that enables data furnishers and CRAs to create and respond to consumer credit history disputes.[7]  The entire Metro 2 manual is available as a matter of record.  (See Millet v. Trulink Inc., Case No. 1:05-cv-00599-SLR, Doc. 174-6).

152.   Defendants know (and should know) that disputes by a consumer to the furnisher via the CRAs are scanned by machines and first routed offshore, including, but not limited to, India (TRANSUNION), the Philippines and India (EQUIFAX) and Costa Rica (EXPERIAN).  CRAs' agents then send the dispute to Defendants.

---

[7] e-OSCAR is an acronym that stands for "**O**nline **S**olution for **C**omplete and **A**ccurate **R**eporting.  http://www.e-oscar.org/about-e-oscar.aspx

153.   RESURGENT responds to the CRAs, either via ACDV or via an Automated Universal Data form ("AUD") to report out-of-cycle credit history updates to the CRAs.

154.   The Consumer Data Industry Association ("CDIA") is a trade association that represents major institutions including CRAs, and provides Metro 2 regulatory compliance training workshops, and guidance for data furnishers such as LVNV and RESURGENT.  The CDIA issues occasional memos for CRAs.

155.   Defendants knew (or should have known) that in 2015, the CDIA issued a memo, whereby the CRAs agreed **that collection agencies** were no longer allowed to report any debts that were "**not the result of a contract or agreement to pay.**" (Emphasis added).  RESURGENT knows it is a collection agency.

156.   Defendants knew (or should have known) that it was furnishing an item that was "not the result of a contract or agreement to pay" between Plaintiff and ANY entity regarding the alleged account.  Defendants knew (or should have known) that at all times relevant, they lacked standing to furnish the item.

157.   The CDIA memo is publicly available, and it speaks for itself.[8]

158.   Plaintiff disputed the accuracy of the alleged account furnished by Defendants and requested the CRAs to reinvestigate the disputed information. Plaintiff sent each "NOTICE OF DISPUTE" via certified mail as follows:

---

[8] https://www.cdiaonline.org/resources/furnishers-of-data-overview/changes-to-guidelines/

COMPLAINT FOR DAMAGES

a.    On July 17, 2017 to EXPERIAN.

b.    On July 24, 2017 to EQUIFAX.

c.    On August 2, 2017 to TRANSUNION.

d.    On September 20, 2017 to TRANSUNION.

e.    On September 26, 2017 to EXPERIAN.

f.    On November 8, 2017 to TRANSUNION (copy to CFPB).

g.    On June 1, 2018 to EXPERIAN.

h.    On June 9, 2018 to EQUIFAX.

i.    On July 11, 2018 to TRANSUNION.

159.   Defendants knew (or should have known), pursuant to the FCRA, Sec 623(b)(1)(E), [15 U.S.C. § 1681s-2(b)(1)(E)], with each subsequent "NOTICE OF DISPUTE" sent to the CRAs, "if an item of information disputed by a consumer is found to be **inaccurate or incomplete or cannot be verified** after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –

(i)    modify the item of information;

(ii)    delete that item of information; or

(iii)    permanently block the reporting of that item of information." (Emphasis added).

COMPLAINT FOR DAMAGES

160. Defendants knew (or should have known) to "review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i]."

161. Defendants failed to review all relevant information provided by the CRAs regarding Plaintiff's disputes.

162. Defendants failed to conduct a reasonable investigation and failed to conduct a reasonable <u>reinvestigation</u> upon receipt of multiple "NOTICE" from the CRAs. Merriam Webster's dictionary defines "reinvestigate" as a transitive verb meaning "to investigate (something) again."

163. Defendants failed repeatedly to update their records to reflect that information they were furnishing to the CRAs was, in fact, false, inaccurate, patently misleading and/or unverified.

164. Defendants continued to willfully and negligently furnish inaccurate information, **failed repeatedly to conduct proper reinvestigations**, and failed repeatedly to correct the inaccuracies to ensure that the false balance for the non-existent debt for the alleged account was **<u>DELETED</u>**. (Emphasis added).

165. Congress amended Section 616 and Section 617 of the FCRA [§ 1681n and § 1681o] in 1996 to expand the reach from "consumer reporting agencies and users of consumer reports" to the present "any person."[9]

---

[9] See Pub. L. No. 104-208, Div. A, Sec. 2412, 110 Stat. 3009, 3009-446 (1996).

166.   Defendants knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer** is liable to that consumer.  (Emphasis added).  Defendants, and each of them, at all times relevant herein, were the principals, agents, employers, employees and ratified, or approved of the acts or omissions alleged herein with respect to the willful and/or negligent violations of the FCRA, and were acting in the course and scope of the authority of such principals, agents, employers and employees.

167.   Defendants received an image file from the CRAs with the dispute letter and ALL relevant documents sent by Plaintiff with each ACDV sent by the CRAs with each "NOTICE OF DISPUTE" sent by Plaintiff.  "ALL relevant documents" include copies of prior proof of deletion and copies of credit reports showing current inaccuracies, etc.

168.   In the alternative, Defendants did NOT receive an image file of the dispute letter and/or ALL relevant documents with each ACDV sent by the CRAs. Instead, Defendants only received the dispute with a corresponding Metro 2 code, and a one or two-line summary description of the dispute.

169.   By way of example, Defendants received an ACDV with an image file of a document titled "AFFIDAVIT OF TRUTH" signed and sworn in front of a California Notary by Plaintiff with his "NOTICE" to EXPERIAN, EQUIFAX and TRANSUNION with a letter dated June 1, June 9 and July 11, 2018, respectively.

170.   In the alternative, Defendants received an ACDV in summary form and did NOT receive an image file of a document titled "AFFIDAVIT OF TRUTH" signed and sworn in front of a California Notary by Plaintiff with his "NOTICE" to EXPERIAN, EQUIFAX and TRANSUNION with a letter dated June 1, June 9 and July 11, 2018, respectively.

171.   As a result of the NINE so-called "reinvestigations", Defendants willfully violated the FCRA by doing the following, including, but not limited to:

a.       Defendants falsely modified the inaccurate LVNV "collections" item by <u>switching</u> the "Date First Reported" from "MAY 2017" to "JUNE 2017" on Plaintiff's EXPERIAN report, which "re-aged" the item to make it appear that it was NOT first reported in MAY of 2017 on the EXPERIAN report.

b.       Defendants falsely modified the inaccurate LVNV "collections" item by <u>switching</u> the "Date First Reported" <u>again</u>, from "JUNE 2017" to "JULY 2017" on Plaintiff's EXPERIAN report.  Plaintiff informed EXPERIAN that RESURGENT had already received a "NOTICE OF DISPUTE" in MAY 2017, and responded to the CFPB in writing on June 15, 2017 indicating that it "did not receive any requests to delete the LVNV tradeline" from Plaintiff.  In doing so, defendants attempted to

"mask" the item from showing on EXPERIAN that it was in fact, first reported and <u>disputed</u> in MAY 2017.

c.      Defendants <u>removed</u> the "$0" from the "Charge Off" data field, which showed the "Charge-Off Balance: $0" from Plaintiff's credit report with EQUIFAX, after Plaintiff sent "NOTICE" to EQUIFAX for a reinvestigation.   Defendants knew that a "charge-off" balance would only show a "$0" if in fact, there was NO BALANCE due at the time of "charge-off." Defendants willfully violated the FCRA by attempting to remove evidence that there was NO BALANCE OWED by Plaintiff at the time of the alleged "charge-off."

d.      Defendants "<u>backdated</u>" the "Account Balance" history in Plaintiff's EXPERIAN consumer report after its receipt of "NOTICE" from EXPERIAN that the item was being reported inaccurately, and <u>switched</u> the "Balance" from $8,955 down to $495.   Plaintiff inquired via telephone after the receipt of the "reinvestigation" results from EXPERIAN and asked who was the person that could have made such change to the "Account Balance" fields, and the representative informed Plaintiff that **"only LVNV could have done that."** (Emphasis added).

e.    Defendants <u>switched</u> the "Balance" <u>again</u>, from $495 to $531 in Plaintiff's EXPERIAN report in the "Account Balance" history, to make it appear that interest and fees were magically accumulating on the so-called "balance." Defendants knew that these random amounts furnished to EXPERIAN were FALSE. Defendants **falsely represented one false balance by switching the false balance to yet another false balance** upon receipt of repeated "NOTICE" by EXPERIAN, thus failing to conduct a proper reinvestigation. (Emphasis added).

f.    Defendants upon receipt of "NOTICE" by EXPERIAN, added a notation to the "Account Balance" history in Plaintiff's EXPERIAN report, falsely representing **<u>"The original account balance for this account was $495."</u>** (Emphasis added).

g.    Defendants, upon receipt of multiple "NOTICE" from TRANSUNION, <u>switched</u> the "Account Status" from "OPEN" to "CLOSED" and claimed the account was "UPDATED." Defendants then switched the "Account Status" from "CLOSED" to "OPEN" once again, claiming the item was "UPDATED." Plaintiff was informed by a representative at TRANSUNION that "<u>We will report whatever LVNV tells us</u>."

172.   As data furnishers utilizing the e-OSCAR system, Defendants pay .30 cents (thirty cents) to respond to <u>each</u> "NOTICE OF DISPUTE" from the CRAs. Defendants know (and should know) they must comply with ALL terms and conditions of their binding contract with Online Data Exchange, LLC ("OLDE").[10]

173.   Defendants paid $3.60 (three dollars and sixty cents) for the TWELVE responses it provided to the CRAs, either via ACDV or AUD regarding Plaintiff's disputes dated from May of 2017 through July of 2018.   Upon information and belief, Defendants and their respective agents have been to Starbucks®.  Defendants knew (or should have known) that $3.60 is less than the cost of just ONE Tall White Chocolate Mocha (hold the whip).

174.   Defendants knowingly, willfully, intentionally and maliciously manipulated the data fields using the e-OSCAR system to operate with impunity upon receipt of NOTICE after NOTICE from the CRAs, by failing to conduct proper reinvestigations, in willful violation of the FCRA § 1681n, and at a bare minimum, in negligent violation of the FCRA, § 1681o.

175.   Defendants **were buried in their own fabrications** while they pretended to "stand in the <u>soiled</u> shoes" of the original alleged creditor(s). Defendants knew (and should have known) that their conduct was WRONG. (Emphasis added).

[10] OLDE makes the e-OSCAR system available for use by data furnishers and CRAs.

## **ARTICLE III STANDING**

176.   Plaintiff reaffirms and re-alleges all preceding paragraphs as though fully stated herein.

177.   Upon information and belief, as cited in a Supreme Court decision, "The irreducible constitutional minimum of standing consists of three elements: injury in fact, causation and redressability.  (See <u>Lujan v. Defs. Of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)).

178.   Plaintiff Vora has standing pursuant to Article III of the United States Constitution because he has suffered an injury in fact, the injury in fact is traceable to the challenged conduct of Defendants' actions described herein, and Plaintiff's injury in fact is likely to be redressed by a favorable judicial decision in this court.

179.   Plaintiff Vora's injury in fact is both particular and concrete because he has suffered an invasion of a legally protected interest that is concrete, particularized and actual or imminent.

180.   By way of example, Plaintiff has spent a tremendous amount of time and energy to research Defendants, the FDCPA, the FCRA and has incurred expenses to fix the errors on his consumer reports.  <u>Defendants acted with the willful and malicious intent to injure and cause harm to Plaintiff</u>.  Plaintiff has suffered anxiety, headaches, loss of sleep, humiliation, and other negative emotions directly caused by Defendants' actions in their willful and negligent violations of the FCRA.

COMPLAINT FOR DAMAGES

181.   Upon information and belief, the Ninth Circuit has opined that "Objective evidence is **NOT** a requirement of emotional distress damages." See Zhang v. Am Gen Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003); See also Johnson v. Hale, F.3d 1351, 1352-53 (9th Cir. 1994). (Emphasis supplied).  See also Boris v. Choicepoint Servs., Inc., 249 F. Supp. 2d 851 (W.D. Ky. 2003) ($100,000 in actual damages based on part on damage to plaintiff's reputation). **The term "actual damages" has been interpreted to include recovery for emotional distress and humiliation.** See Johnson v. Department of Treasury, I.R.S., 700 F.2d 971 (5th Cir. 1983).  (Emphasis supplied).

182.   Defendants operate by way of deception through a maze of inextricably intertwined LLCs to trick the consumers by hiding behind their shell companies. Its actions are all in attempts to avoid detection of their chicanery, and if fully known, would shock the moral conscience of any reasonable man or woman.

183.   Plaintiff is within the statute of limitations pursuant to the FCRA, § 1681p, as Plaintiff first discovered the conduct by Defendants in March of 2017, and thus Plaintiff's claims are not time-barred.  Upon information and belief, Defendants have made an objectively unreasonable reading of the FCRA, which has gone far beyond a mere careless reading of the statute.  Defendants' actions were in willful and reckless disregard of the FCRA.  Defendants had ample opportunity to rectify its actions, thus making any "bona fide error" defense more suitable for the shredder.

COMPLAINT FOR DAMAGES

184.   Guided by the provisions of <u>Lujan</u>, Plaintiff now brings forth his causes of action against defendants for violations of Federal Law, 15 U.S.C. § 1681 et seq.

## CAUSES OF ACTION

### COUNT I- VIOLATION OF THE FCRA, 15 U.S.C. § 1681(b)

185.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

186.   <u>On or around March 16, 2017</u>, defendants accessed Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer reports."

187.   Defendants violated § 1681b by NOT having permission to access the EXPERIAN report pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

188.   Defendants knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that defendants at all times relevant lacked standing to obtain such report.

189.   Defendants violated § 1681b(f), in obtaining Plaintiff's report through EXPERIAN, and knew (or should have known) that once defendants gained access to the EXPERIAN report, defendants had no lawful purpose to use such a report. **Such request, acquisition and use of Plaintiff's consumer report was willful**, and caused damage to Plaintiff, thereby violating § 1681n.  Plaintiff is entitled to actual

damages or statutory damages.  Plaintiff is entitled to punitive damages, costs of suit, and attorney's fees as applicable.  (Emphasis added).

190.   In the alternative, defendants' actions were at the bare minimum, negligent, and caused damage to Plaintiff, thereby violating § 1681o.  Plaintiff is entitled to actual damages, costs of action and reasonable attorney's fees, as applicable.

## COUNT II – VIOLATION OF THE FCRA, 15 U.S.C. § 1681b

191.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

192.   On or around April 25, 2017, defendants accessed Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer reports."

193.   Defendants violated § 1681b by NOT having permission to access the EXPERIAN report pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

194.   Defendants knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that defendants at all times relevant lacked standing to obtain such report.

195.   Defendants violated § 1681b(f), in obtaining Plaintiff's report through EXPERIAN, and knew (or should have known) that once defendants gained access

COMPLAINT FOR DAMAGES

to the EXPERIAN report, defendants had no lawful purpose to use such a report. **Such request, acquisition and use of Plaintiff's consumer report was willful**, and caused damage to Plaintiff, thereby violating § 1681n.  Plaintiff is entitled to actual damages or statutory damages.  Plaintiff is entitled to punitive damages, costs of suit, and attorney's fees as applicable.  (Emphasis added).

196.  In the alternative, defendants' actions were at the bare minimum, negligent, and caused damage to Plaintiff, thereby violating § 1681o.  Plaintiff is entitled to actual damages, costs of action and reasonable attorney's fees, as applicable.

### COUNT III- VIOLATION OF THE FCRA, 15 U.S.C. § 1681b

197.  Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

198.  On or around October 24, 2017, defendants accessed Plaintiff's consumer report with EXPERIAN, without any permissible purpose as defined in the FCRA, § 1681b, "Permissible purpose of consumer reports."

199.  Defendants violated § 1681b by NOT having permission to access the EXPERIAN report pursuant to § 1681b(a)(1), § 1681b(a)(2), § 1681b(a)(3)(A)-(G), § 1681b(a)(4)(A)-(D), § 1681b(a)(5) and § 1681b(a)(6).

COMPLAINT FOR DAMAGES

200.   Defendants knew (or should have known) that access to Plaintiff's EXPERIAN report was private, confidential information, and that defendants at all times relevant lacked standing to obtain such report.

201.   Defendants violated § 1681b(f), in obtaining Plaintiff's report through EXPERIAN, and knew (or should have known) that once defendants gained access to the EXPERIAN report, defendants had no lawful purpose to use such a report. **Such request, acquisition and use of Plaintiff's consumer report was willful**, and caused damage to Plaintiff, thereby violating § 1681n.  Plaintiff is entitled to actual damages or statutory damages.  Plaintiff is entitled to punitive damages, costs of suit, and attorney's fees as applicable.  (Emphasis added).

202.   In the alternative, defendants' actions described herein were at the bare minimum, negligent, and caused damage to Plaintiff, thereby violating § 1681o. Plaintiff is entitled to actual damages, costs of action and reasonable attorney's fees, as applicable.

## COUNT IV – VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)

203.   Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

204.   Defendants received a "NOTICE OF DISPUTE" from all three major CRAs dated May 22, 2017 via ACDV, citing the inaccuracies of an item being furnished by defendants.

205.    Defendants failed to conduct a proper <u>investigation</u> upon receipt of NOTICE from the CRAs, thereby violating § 1681s-2(b)(1)(A).

206.    Defendants failed to review all relevant documentation upon receipt of NOTICE from the CRAs, thereby violating § 1681s-2(b)(1)(B).

207.    Defendants failed to properly report the results to the CRAs, thereby violating § 1681s-2(b)(1)(C).

208.    Defendants failed to delete item that was false, inaccurate, patently misleading and/or unverified, thereby violating § 1681s-2(b)(1)(E).

209.    As a result of the violations by defendants of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages, and thus is entitled to recover actual damages pursuant to § 1681n and/or § 1681o.

210.    Defendants' actions were willful, thereby making them liable to Plaintiff for statutory damages and/or punitive damages pursuant to § 1681n.

211.    Plaintiff is entitled to recover costs of the action and reasonable attorney's fees from defendants as applicable, pursuant to § 1681n and/or § 1681o.

**COUNT V – VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)**

212.    Plaintiff reaffirms and incorporates by reference all preceding paragraphs as though fully stated herein.

213.    Defendants received additional "NOTICE OF DISPUTE" from all three major CRAs described herein, citing the inaccuracies of the item being

furnished by defendants. Specifically, defendants received "NOTICE" on nine separate occasions, requesting the reinvestigation of the item described herein. Each NOTICE was sent via USPS Certified Mail delivery tracking, and speaks for itself.

214.   Defendants failed to conduct proper <u>reinvestigations</u>, Defendants failed to consider ALL relevant information, and Defendants failed to correct the inaccuracies by properly modifying, deleting and permanently blocking the item that was false, inaccurate, patently misleading and/or UNVERIFIED.

215.   Defendants' actions were willful, in violation of § 1681n, and Plaintiff has suffered actual damage.

216.   At a bare minimum, defendants' actions were negligent, in violation of § 1681o, and Plaintiff has suffered actual damage.

217.   Plaintiff seeks to recover actual damage or statutory damage pursuant to 15 U.S.C. § 1681n(a)(1)(A).

218.   Plaintiff seeks to recover punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), as determined by the Court.

219.   Plaintiff is entitled to recover costs of the action, and reasonable attorney's fees (if applicable), pursuant to § 1681n(a)(3).

220.   In the alternative, Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o(a)(1), and costs of the action with reasonable attorney's fees (if applicable), pursuant to 15 U.S.C. § 1681o(a)(2).

## TRIAL BY JURY DEMANDED

221.   Plaintiff hereby seeks discovery on all matters, including any potential amended complaint, and demands jury trial on all claims subject to a trier of fact.

## PRAYER FOR RELIEF

222.   WHEREFORE, Plaintiff prays for the following judgment entered against Defendants:

a.   For Count I, actual damages or $1,000, whichever is greater, pursuant to § 1681n(a)(1)(B).

b.   For Count II, actual damages or $1,000, whichever is greater, pursuant to § 1681n(a)(1)(B).

c.   For Count III, actual damages or $1,000, whichever is greater, pursuant to § 1681n(a)(1)(B).

d.   For Counts IV and V, actual damages or statutory damages pursuant to § 1681n(a)(1)(A) for each NOTICE, and/or actual damages pursuant to § 1681o(a)(1) for each NOTICE.

e.   For all counts, punitive damages that a court may allow, pursuant to § 1681n(a)(2).

f.   For all counts, cost of the action and reasonable attorney's fees (if applicable), pursuant to § 1681n or § 1681o.

g.   For any other relief that the court may deem just and proper.

COMPLAINT FOR DAMAGES

1

2   Respectfully submitted this day of _Sept. 14, 2018_

3

4

5   By: Pritish Vora, Pro Se

6

7   _[signature]_

8   _____

9

10

11  Pritish Vora

12  27758 Santa Marg. Pkwy, #530

13  Mission Viejo, CA  92692

14

15  (949) 292-8359

16  pvora2112@gmail.com

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES